IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| **DAVID MICHAEL GARCIA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:25-cv-2657 |
| | § | |
| **BENTHIC USA LLC,** | § | JURY DEMANDED |
| **Defendant,** | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE U.S. DISTRICT JUDGE:**

**NOW COMES**, Plaintiff, DAVID MICHAEL GARCIA ("Plaintiff" or "Mr. Garcia"), complaining of and about Defendant, BENTHIC USA LLC ("Benthic") and for cause of action files this Plaintiff's Original Complaint, showing to the Court as follows:

### I.   PARTIES AND SERVICE

1. Plaintiff, David Michael Garcia, is a citizen of the United States and the State of Texas.

2. Defendant Benthic USA LLC is a Company under the laws of Texas. At all times pertinent to this case, Plaintiff was employed by Benthic. Benthic USA LLC holds its usual place of business at 3311 Richmond Avenue, Ste 227, Houston, TX 77098 USA. Benthic can be served through registered agent Violet Simmons at 1805 Brittmoore Road, Houston, TX 77043 USA.

### II.   JURISDICTION AND VENUE

3. This Court possesses jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims are grounded in federal law: allegations hostile work environment, subjected to unconstitutional

practices contravening Title VII of the Civil Rights Act of 1964, retaliation under Title VII of the Civil Rights Act of 1964 (as amended), which is enshrined in 42 U.S.C. §§ 2000e-3(a) and 2000e-2(a) respectively, Americans with Disabilities Act.

4. The venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Benthic, where Mr. Garcia was employed and where the alleged discriminatory practices took place, are located within this district.

### III. NATURE OF ACTION

5. This is an employment discrimination and personal injury action arising under federal and state law. Plaintiff, Mr. Garcia, brings this suit against Defendant Benthic for subjecting him to a hostile work environment characterized by discriminatory and retaliatory conduct, in violation of Title VII of the Civil Rights Act of 1964 and the Texas Labor Code. The hostile work environment was perpetuated by derogatory comments, retaliatory actions following Mr. Garcia's application for a managerial position, and ongoing animosity from his manager, all of which substantially interfered with his ability to perform his job duties.

6. Furthermore, Defendant failed to provide a safe and supportive workplace, breaching its duty under the Occupational Safety and Health Act (OSHA) and applicable Texas law. This negligence directly contributed to Mr. Garcia suffering a stroke that caused permanent nerve damage to his left eye, resulting in a disability.

7. Despite Mr. Garcia's disability, Defendant neglected its obligations under the Americans with Disabilities Act (ADA) and the Texas Labor Code by failing to engage in the required interactive process or provide reasonable accommodations to enable Mr. Garcia to perform the

essential functions of his position.

8.  As a result of Defendant's unlawful and negligent conduct, Mr. Garcia has suffered severe physical, emotional, and financial harm. This action seeks appropriate legal and equitable relief, including but not limited to compensatory damages, injunctive relief, and attorneys' fees.

### IV.  CONDITIONS PRECEDENT

9.  The law allows individuals who have been subjected to discrimination to file a lawsuit in federal court. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code.

10.  On January 2, 2025, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) under Charge Number 460-2025-02457 against Defendant for discrimination, hostile work environment, retaliation, and failure to accommodate disability.

11.  Subsequently, the EEOC issued Plaintiff a Notice of Right to Sue (NRTS), which Plaintiff received on March 10, 2025. Plaintiff files this lawsuit within ninety (90) days of receipt of the NRTS, making this action timely filed.

### V.  FACTS

12.  On or about June 3, 2024, Plaintiff, Mr. Garcia, began his employment with Defendant, Benthic, in the position of Mechanical Engineer.

13.  At the time of hire, Plaintiff was informed that he would receive four months of training tailored to his role. Benthic is one of only two companies in the industry that specializes in offshore seismic and drilling operations, including coring and seismic exploration. Despite these representations, Mr. Garcia was not provided with the structured training necessary for success in

his position. No formal training manuals or detailed written procedures were supplied, and Benthic failed to assign any personnel to train him in a comprehensive manner. Instead, Mr. Garcia received fragmented and limited information, conveyed either verbally or via Microsoft Teams. No physical demonstrations or tangible project examples were made available to him for review. Consequently, he was forced to depend on his manager and colleagues for direction.

14. In the absence of formal training, Mr. Garcia took the initiative to independently collect information and worked diligently to familiarize himself with the highly specialized operations required for his role.

15. On or about July 25, 2024, Benthic sent Mr. Garcia to Brazil for hands-on training. However, the necessary equipment, known as the Portable Remotely Operated Drill (PROD), was delayed in customs and remained unavailable for several weeks. During this period, Mr. Garcia assisted a coworker with tasks more closely aligned with his prior experience in the oil and gas sector.

16. While in Brazil, Benthic's offshore manager and several team members recognized Mr. Garcia's extensive industry knowledge and field experience. He was encouraged to apply for an open managerial position due to his performance and technical skill.

17. Due to his performance and technical skill, on or about August 10, 2024, he was encouraged to apply for an open Project Engineering Manager position.

18. On August 22, 2024, Mr. Garcia returned to the United States. Upon his return, he was summoned to a meeting with his manager, Josh Turnbull, who showed him an email received from the offshore manager, the project manager, and the Brazilian team. The email commended Mr. Garcia and a colleague for their outstanding performance. Mr. Garcia interpreted the praise as a

positive evaluation of his work, and it boosted his confidence regarding his future with the company.

19.    On September 7, 2024, Mr. Garcia submitted an application for the aProject Engineering Manager position. During a Microsoft Teams call regarding upcoming projects, Mr. Turnbull initially appeared rushed and eager to conclude the meeting. However, upon learning of Mr. Garcia's application for the promotion, Mr. Turnbull's demeanor abruptly changed. His tone became monotone, his expression blank, and he nervously fidgeted with a pen. He closed the conversation with a detached comment: "If that's where you feel more comfortable, I wish you the best."

20.    Shortly thereafter, the company held a mandatory meeting announcing a corporate restructuring. Several employees were terminated, including the Engineering General Manager. Following this departure, Mr. Turnbull was promoted and placed in charge of multiple departments. After his promotion, Mr. Turnbull's attitude changed drastically. He became less collaborative and more self-centered, abandoning the team-oriented approach he had previously exhibited.

21.    Around September 30, 2024, after overhearing internal discussions about upcoming layoffs within the Engineering Group, Mr. Garcia decided to leave the office early, concerned about his job security as a new hire without proper training. While he was on his way home, he received a call from Ruth Jones, a Human Resources representative, who asked him why he had left the office.

22.    Mr. Garcia explained his concerns and noted his growing discomfort with Mr. Turnbull's hostile demeanor, especially after applying for the management role. Ms. Jones asked him to return

to the office the next day, indicating that the company wanted to retain him and intended to address the situation.

23. On October 2, 2024, Mr. Garcia attended a meeting with Ms. Jones and Mr. Turnbull. During the meeting, Mr. Garcia voiced his grievances regarding the restructuring, lack of training, and deteriorating working conditions. He indicated an intent to submit his two-week notice. Ms. Jones discouraged him from resigning, stating the company preferred he stay. Mr. Garcia agreed to remain with Benthic. He observed that Mr. Turnbull appeared visibly irritated by both the HR representative's suggestion and Mr. Garcia's decision to stay.

24. On or about October 9, 2024, a coworker asked Mr. Garcia for assistance on a project. Mr. Garcia agreed, only to find out later that the coworker had provided incorrect instructions that originated from Mr. Turnbull. These errors led to a flawed submission. Mr. Turnbull admitted to having provided inaccurate verbal instructions. A second employee was then assigned to help, but even with corrections, the project was again submitted with errors due to continuing misinformation from Mr. Turnbull. Mr. Garcia made clear in a Microsoft Teams message that he did not complete the mathematical calculations and would not accept credit for them.

25. On October 11, 2024, Mr. Garcia submitted revised versions of both the corrected project and another assignment he had received without prior guidance or background. He received no acknowledgment. Mr. Garcia reached out to Mr. Turnbull by phone. Mr. Turnbull initially ignored the call, later replying by text that he would return the call. When he finally did, the conversation was tense. Mr. Garcia noted that he suspected the call was being recorded—an accusation Mr. Turnbull neither confirmed nor denied. When Mr. Garcia stated that a manager should support his subordinates, Mr. Turnbull curtly responded that it was merely Mr. Garcia's opinion. Mr. Turnbull

closed the call by stating he would contact HR because he did not believe Mr. Garcia was suitable for the role.

26. Despite having no background in the subject matter, Mr. Garcia received another project assignment on October 14, 2024, and, though it was a holiday and HR was unavailable, he attempted the task. The final submission contained errors.

27. On October 15, 2024, a meeting was held with Mr. Garcia, Mr. Turnbull, and Ms. Jones. At Mr. Garcia's request, the General Director—who was also new to the company—was invited as a neutral observer. Before the meeting, Mr. Garcia overheard Mr. Turnbull refer to him as a "dumbass" in a conversation with the hiring manager. During the meeting, Mr. Garcia outlined his concerns, including the hostility in his work environment. Although alternate positions were discussed, none were confirmed as valid opportunities. Ultimately, Benthic chose to place Mr. Garcia on a performance-based improvement plan.

28. After the meeting, Mr. Garcia left work early due to a severe headache and blurred vision in his left eye. Although he told Mr. Turnbull he would be working on math problems, the true reason was his declining physical health. While driving home, Mr. Garcia temporarily lost vision in his left eye.

29. On October 16, 2024, he experienced another episode while dropping off his son. He contacted his aunt, who advised him to go to the emergency room immediately. At the ER, tests confirmed Mr. Garcia had suffered a stroke. He was airlifted to Houston for further treatment.

30. Medical evaluations between October 16 and 17, 2024, confirmed that the stroke had caused permanent nerve damage to his left eye and ocular migraines. He was discharged on

October 17, 2024, and continues to receive follow-up care in Victoria and Houston. He has lost permanent vision in his left eye and suffers from ocular migraines.

31. Plaintiff went on disability as a direct result of the stroke and permanent injury he suffered while employed by Benthic. Prior to being able to enroll in long-term disability benefits, Plaintiff was required to check a box that, according to Plaintiff, appears to authorize the insurer to seek reimbursement for any payments already made. This option was mandatory to proceed with the long-term disability application, and Plaintiff was given no alternative but to accept it. Despite completing the application, Plaintiff has yet to receive any long-term disability payments.

32. Plaintiff has experienced significant difficulties with the short-term and long-term disability insurance company. It has been five months since Plaintiff last received any payment

33. These delays and difficulties have exacerbated Plaintiff's financial and emotional distress, which stem from the inadequate training, hostile work environment, and the subsequent medical emergency caused by the workplace conditions at Benthic. Plaintiff has relied on disability benefits as a critical source of income following the stroke and permanent injury suffered during his employment with Benthic. The insurer's failure to provide timely payments has further compounded Plaintiff's hardship and underscores the ongoing impact of Benthic's negligence.

## VI.    CAUSES OF ACTION

### NO. 1 – Hostile Work Environment
*(Title VII of the Civil Rights Act of 1964; Texas Labor Code Chapter 21)*

34.    Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

35.    Plaintiff respectfully submits that Defendant, through its managerial employee Josh Turnbull, has created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code.

36.    Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin. It also prohibits retaliation against an employee who asserts his or her rights under the Act. The U.S. Supreme Court has held that Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

37.    Similarly, Chapter 21 of the Texas Labor Code prohibits employment practices that discriminate against an individual based on race, color, disability, religion, sex, national origin, or age. It also prohibits retaliation against an individual who opposes a discriminatory practice, files a complaint, or testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

38.    In the present case, Plaintiff has been subjected to persistent verbal mistreatment, dismissiveness, exclusion from opportunities, and antagonistic behavior by Mr. Turnbull, particularly after Plaintiff applied for an internal promotion. This behavior escalated to the point

of Mr. Turnbull calling Plaintiff a "dumbass" within earshot of others, ignoring communications, and publicly dismissing his work. This conduct was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and to create a work environment that no reasonable employee should be expected to endure.

39.     Moreover, Defendant was aware of the hostile behavior and failed to take prompt or effective remedial action. This failure to act constitutes a violation of Title VII and Chapter 21 of the Texas Labor Code. See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998), holding that an employer is vicariously liable for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.

40.     Therefore, Plaintiff respectfully requests that this Court find in his favor on his claims of a hostile work environment and retaliation under Title VII and Chapter 21 of the Texas Labor Code..

### NO. 2 – Retaliation
*(Title VII of the Civil Rights Act of 1964; Texas Labor Code § 21.055)*

41.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

42.     Plaintiff respectfully submits that he has sufficiently established a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and Chapter 21 of the Texas Labor Code, Tex. Lab. Code § 21.051, 21.055.

43.     Under Title VII and Chapter 21, it is unlawful for an employer to retaliate against an employee for engaging in protected activity, which includes opposing discriminatory practices or participating in an employment discrimination proceeding. See Burlington Northern & Santa Fe

Railway Co. v. White, 548 U.S. 53, 59 (2006) ; Quantum Chemical Corp. v. Toennies, 47 S.W.3d 473, 480 (Tex. 2001).

44. To establish a prima facie case of retaliation, Plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. See McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007).

45. Here, Plaintiff has met all three elements. First, Plaintiff engaged in protected activity when he applied for a promotion and raised internal complaints about the lack of training, hostile work environment, and discriminatory treatment. Second, Plaintiff suffered adverse employment actions, including increased scrutiny, inadequate resources, inaccurate instructions, unjustified performance improvement plan, public humiliation, verbal abuse, and isolation from advancement opportunities. Third, the close temporal proximity between Plaintiff's complaints and the adverse actions supports an inference of a causal connection. See Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001).

46. Moreover, Defendant's actions would deter a reasonable employee from engaging in protected activity, which is a violation of Title VII and Chapter 21. See Burlington Northern, 548 U.S. at 68.

47. Therefore, Plaintiff has established a prima facie case of retaliation, and the burden now shifts to Defendant to articulate a legitimate, non-retaliatory reason for the adverse employment actions. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

48. In conclusion, Plaintiff respectfully requests that this Court deny Defendant's motion for summary judgment and allow this case to proceed to trial.

**NO. 3 – Disability Discrimination**
*(Americans with Disabilities Act; Texas Labor Code § 21.128)*

49. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

50. Plaintiff respectfully submits that Defendant's actions constitute a clear violation of the Americans with Disabilities Act (ADA) and Chapter 21 of the Texas Labor Code. The ADA prohibits discrimination against individuals with disabilities in all areas of public life, including jobs, and requires employers to provide reasonable accommodations to employees with disabilities, unless doing so would cause significant difficulty or expense for the employer [42 U.S.C. § 12112(b)(5)(A)]. Similarly, Chapter 21 of the Texas Labor Code prohibits employment discrimination based on disability and requires employers to make reasonable accommodations [Tex. Lab. Code § 21.128].

51. In this case, Plaintiff, a disabled individual as defined under the ADA and Chapter 21, informed Defendant of his declining health and excessive workplace stress prior to his stroke. This put Defendant on notice of a potentially serious medical condition. However, Defendant failed to engage in the interactive process to determine an effective accommodation, as required by law [29 C.F.R. § 1630.2(o)(3)]. Instead, Defendant discharged Plaintiff just after his stroke, provided no meaningful assistance, offered no reasonable accommodations, and failed to ensure continuity of income or job protection.

52. Defendant not only failed to engage in the interactive process to determine an effective accommodation for Plaintiff, as required by 29 C.F.R. § 1630.2(o)(3), reminding this failure alone can be a violation of the ADA. See, e.g., EEOC v. LHC Group Inc., 773 F.3d 688, 703 (5th Cir. 2014) (holding that an employer's failure to engage in the interactive process can be a violation of

the ADA), Defendant's decision to discharge Plaintiff immediately after his stroke raises a strong inference of discrimination. The timing of Plaintiff's discharge, coming just after he became disabled, suggests that Defendant may have dismissed him because of his disability. See, e.g., Pinkerton v. Spellings, 529 F.3d 513, 519 (5th Cir. 2008) (holding that close timing between an employee's protected activity and an adverse employment action can be sufficient to establish a prima facie case of retaliation).

53. Furthermore, under Chapter 21 of the Texas Labor Code, an employer may not discriminate against an employee because of a disability. Tex. Lab. Code § 21.051(1). An employer discriminates against an employee if the employer fails to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. Tex. Lab. Code § 21.128(a).

54. This failure to accommodate Plaintiff's disability is a clear violation of the ADA and Chapter 21. In EEOC v. LHC Group Inc., the court held that the ADA requires an employer to provide reasonable accommodations to an employee with a disability, and that failure to do so constitutes discrimination. Similarly, in Turcios v. Pearson, the court held that an employer's failure to engage in the interactive process to determine a reasonable accommodation for a disabled employee can be evidence of discrimination.

55. As a direct and proximate result of Defendant's actions, Plaintiff suffered financial harm, emotional distress, and deterioration of his health. Under both the ADA and Chapter 21, a plaintiff who prevails on a claim of disability discrimination is entitled to compensatory damages, including damages for emotional distress [42 U.S.C. § 1981a; Tex. Lab. Code § 21.2585].

56. Therefore, Plaintiff respectfully requests that this Court find in his favor on his claims of disability discrimination under the ADA and Chapter 21 of the Texas Labor Code..

### NO. 4 – Negligence and Unsafe Work Environment
*(Occupational Safety and Health Act, 29 U.S.C. § 654; Texas Common Law Tort Principles)*

57. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

58. Plaintiff respectfully submits that Defendant's failure to provide a safe and healthful work environment, as required by the Occupational Safety and Health Act (OSHA) and Texas common law, directly resulted in Plaintiff's stroke and subsequent injuries.

59. Under OSHA, employers have a general duty to provide a workplace free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees (29 U.S.C. § 654(a)(1)). This duty extends to mental health hazards, such as high-stress work environments, which can lead to serious physical harm. See Secretary of Labor v. Integra Health Management, Inc., OSHRC Docket No. 13-1124 (2019).

60. In this case, Defendant failed to address or mitigate the high-stress work environment, despite Plaintiff's repeated complaints of physical symptoms and stress-related health warnings. This failure constitutes a breach of Defendant's duty under OSHA.

61. Under Texas common law, employers owe a duty of reasonable care to their employees. This duty includes taking reasonable steps to prevent foreseeable harm to employees. See Nabors Drilling, U.S.A., Inc. v. Escoto, 288 S.W.3d 401, 404 (Tex. 2009).

62. Here, Plaintiff informed HR of his deteriorating condition. Despite this, Defendant failed to assess Plaintiff's health risk or take preventive action. This failure constitutes a breach of Defendant's duty under Texas common law.

63. As a result of Defendant's negligence, Plaintiff suffered a stroke leading to permanent nerve damage and partial vision loss in his left eye along with ocular migraines—a disabling condition. This injury was a foreseeable consequence of Defendant's failure to address the high-stress work environment and Plaintiff's repeated health warnings.

64. Therefore, Defendant's negligence was a proximate and producing cause of Plaintiff's injuries. As a result, Plaintiff has suffered damages including physical injury and permanent impairment, emotional distress, lost wages and earning capacity, medical expenses, and loss of quality of life.

65. For these reasons, Plaintiff respectfully requests that this Court find in his favor on Count Three – Negligence (Unsafe Work Environment) under OSHA and Texas common law.

### VII. DAMAGES

66. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendants described hereinabove:

    a. Back pay from the date of his non-selection to present, with interest;

    b. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    c. All reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff;

      d.      All reasonable and necessary costs incurred in pursuit of this suit;

      e.      Compensatory damages and emotional pain;

      f.      Exemplary/Punitive Damages;

      g.      Pre- and post-judgment interest;

      h.      Mental anguish in the past; and

      i.      Mental anguish in the future.

## VIII. <u>JURY DEMAND</u>

67. Plaintiff demands a trial by jury and has tendered the appropriate fee with this Original Complaint.

## IX. <u>PRAYER</u>

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, David Garcia, respectfully prays that Defendant, Benthic, be cited to appear and answer herein and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be justly entitled at law or in equity.

Respectfully submitted,

kennard law P.C.

_____
**Alfonso Kennard, Jr.**
Texas Bar No. 24036888
**Eddie Hodges Jr.**

        Texas Bar No. 24116523
        Kennard Law, P.C.
        5120 Woodway Dr., Suite 10010
        Houston, Texas 77056
        Main: 713.742.0900
        Fax: 832.558.9412
        Email: filings@kennardlaw.com
        Email: alfonso.kennard@kennardlaw.com
        Email: eddie.hodges@kennardlaw.com
        **ATTORNEYS FOR PLAINTIFF**